Case number 1553-56, William Allen v. Bruce Westbrooks, oral argument not to exceed 15 minutes per side, Mr. Minton for the appellant. May it please the court, my name is Chris Minton, I'm an assistant federal public defender from Nashville, Tennessee. Sumter Camp and I represent the petitioner appellant, William Allen. I'd like to reserve two minutes of my time for rebuttal. You may, please proceed. The state concedes that the AEDPA second or successive provisions don't apply to Mr. Allen's grand jury discrimination claim. In re stancil lays to rest the state's argument that the pre-AEDPA abuse of the writ doctrine applies to this AEDPA 2254 proceeding. That leaves the state's perfunctory request for a remand. I intend to spend my time talking about why this court should resolve Mr. Allen's claim on the merits, as well as addressing any concerns the court may have on other issues. The state does not ask for a remand in order to present additional evidence. The state had that opportunity at the summary judgment proceedings and chose not to produce any evidence. Therefore, the record today is as complete now as it will ever be. There's no need for additional factual development. And the record establishes that the same grand jury that indicted William Allen also indicted James Thomas Jefferson. In Jefferson versus Morgan, this court held that that grand jury was assembled in violation of the 14th Amendment's equal protection clause. Jefferson establishes Mr. Allen's grand jury discrimination claim. It supersedes this court's previous opinion in the initial habeas proceeding. Mr. Minton, let me sort of help you out here, at least in terms of the concerns that I have in this case, by suggesting what they are and then you can address them as you choose. I don't think there's probably any doubt here about whether, there is no doubt about whether this is a second or successive. This is a new judgment, so you don't have to worry about that. But we still have this situation of the last recent state decision, as I understand it, is this Tennessee Court of Appeals decision in 1973. That's correct. Basically, we're looking to see whether that decision was, I think, contrary or unreasonably, application applies to that. But I'm not even sure about that because that was a pre-EDPA decision. So ignoring for a second what the standard is that we apply to measure the 1973 decision of the Tennessee Court, we're talking about, for example, Jefferson in 1992 decision. So it just seems to me this is still more complicated than, frankly, I'm comfortable having sorted out yet as to are we saying then that Jefferson is retroactive and how does that deal with the Teague non-retroactivity doctrine. We have all these questions, at least in my mind, circulating around here, none of which were addressed by the court below because they thought, incorrectly, that this was a second or successive. So there are a lot of these questions that I think we would have to address here that I'm not even convinced were even briefed. So how do I, assure me how I get over that concern, please. Sure, let me help you conceptualize this. There are two pieces to Mr. Allen getting relief on his grand jury discrimination claim. The first is showing that the state court opinion in 1972 or 3 was unreasonable or contrary to clearly established federal law. And that's the 2254D analysis you're talking about. So we agree that that's the test that applies to the 1973 decision. We agree on that. We agree on that. Once Mr. Allen makes that showing, then the court is free to consider any evidence that he presented on the merits. He's passed the 2254D restriction. He's passed pinholster problems. He's now into the merits. We're looking then at whether it was contrary to an unreasonable application of Supreme Court cases at the time of that decision. That's correct. So there are a series of, I think it's three cases, that you cite saying it was contrary to. And there's another decision that he cites that says it was not. And then you throw in Jefferson. So how do we even use Jefferson here? One uses Jefferson when one gets to the merits. I agree that Jefferson's not available for 2254D analysis. And under 2254D analysis, the state court, the court of criminal appeals, said that it looked at the evidence that Mr. Allen presented and didn't find enough evidence there to establish a prima facie case of discrimination that would then shift the burden to the state to provide a nondiscriminatory reason. That's contrary to an unreasonable application of a number of Supreme Court decisions. The Supreme Court had established at that point that a petitioner makes or a defendant makes a prima facie showing of discrimination by showing two things. One, a selection system that is susceptible to abuse. And two, underrepresentation of African Americans as grand jury members over a substantial period of time. As to that first piece in the puzzle, Tennessee had at the time a key man system which allowed judges to select on their own handpick grand jury members. And the Supreme Court recognized in Henderson-Hernandez versus Texas in 1954 that such a key man system allows for an opportunity for discriminatory abuse. So there's the first piece in the puzzle. Understanders that applied at the time of the previous state court opinion. The second piece in the puzzle is underrepresentation over a substantial period of time. Mr. Allen presented to that state court in that state court proceeding two independent bases for finding underrepresentation of African Americans at an actual disparity rate of between 17 and 18 percent. One is the Givens order and the other is the judge's testimony. Both of those evidentiary bases showed, again, 17 to 18 percent actual disparities. At that time, Jones versus Georgia established that a petitioner shows, makes a prima facie showing of underrepresentation with an actual disparity showing of 14.7 percent. Mr. Allen's actual disparity showing is greater than that. And those two pieces established that at that state court proceeding, Mr. Allen made a prima facie case of discrimination and the state court's decision that he didn't is contrary to or an unreasonable application of Hernandez, Jones, Sims, and Whitus. But interestingly enough, he raises this same argument not only before the Tennessee courts, but then in his initial habeas petition before this court, right? Correct. He gets rejected. Correct. And I think he applies for cert and it gets denied. I think that's right as well. So, I mean, I understand that a good argument, probably a prevailing argument, could be made that you're probably not barred by abuse of the writ. The law of the case doesn't apply. I get all that. We don't usually apply the typical race judicata principles in habeas when you have a new judgment and you get to start over. But we still have this sort of inexplicable situation, it seems to me, where this very claim has already been presented to this court and to the Supreme Court and nobody bought this argument that the 1973 decision was contrary to or an unreasonable application of. Now, given that we're still going to go, we still look backwards to see if that was, if we're now going to say it was unreasonable, what's changed? The previous Sixth Circuit opinion, the Sixth Circuit got it wrong. And what's changed... Maybe. We do that all the time. Right. But what's changed is Jefferson v. Morgan has come out. Because at this point, we are past the 2254D analysis, which we just discussed, and we are now considering the claim's merits. But the Sixth Circuit found, correctly or incorrectly, that it wasn't contrary to those four Supreme Court decisions as of 1973, correct? No, that's not correct. The Supreme Court did not perform... You said the Sixth Circuit. I'm sorry, the Sixth Circuit. The Sixth Circuit did not perform 2254D analysis during the previous proceeding because 2254D didn't exist at that point. Now, so you don't find anything in there talking about whether the state court's decision was contrary to or an unreasonable application of clearly established state or federal law. What you find in this court's previous decision is a discussion about whether the trial judge's testimony was sufficient to rebut the prima facie case in showing that the court recognized. And what this court ruled in Jefferson v. Morgan was that that testimony wasn't sufficient. And Jefferson is a reported decision of this court, and the previous decision was an unreported decision. The Jefferson reported decision controls. And what we've got from the judges, according to Jefferson, are good faith affirmations that we tried, it was difficult, but we couldn't do it. And clearly established law in 2254D says that doesn't count as an adequate rebuttal to a prima facie showing, and that law applies to the 2452D analysis as well as to the merits analysis that we get to once we get past 2254D. And so you're saying that contrary to or an unreasonable application is the standard we have to apply today because we're after 1996. But what standard do we then apply to the 1973 decision, looking back? The Sixth Circuit decision or the state court decision? The state court decision. Well, once you do the 2254D analysis and you use the cases that were available at the time the state court rendered its opinion, and under those cases, Hernandez, Jones, Whitus, and Sims, the decision that the record did not reflect a prima facie showing is unreasonable and contrary to clearly established federal law. And once we get past that showing, once we've made that showing, at that point it's a question on the merits. 2254D no longer precludes the court from granting Mr. Allen relief. If you get by that question, then I assume we're probably bound by Jefferson under the panel rule. Exactly. That's exactly right, Your Honor. So I think what we're coming to agree on... Do you think it's fair to say that all of these issues as to 1973 are now fairly briefed in the material that both of you have submitted? The 2254D issues? Yes, all the questions attendant to whether 1973 was an unreasonable or contrary to application of clearly established Supreme Court law, and then the subsequent question of do we apply Jefferson under either the panel rule or under some exception to non-retroactivity. As to the 2254D question, Mr. Allen presented that in his brief limited to what he saw in the Court of Criminal Appeals' opinion, explaining why that was unreasonable or contrary to. The State didn't take issue with any of that. If this Court... I understand that this Court has under Harrington v. Richter sees itself as having authority, and I disagree, but the Court sees itself as having authority to create additional reasons that might make the Court of Criminal Appeals' opinion reasonable in its eyes and reasonable decision in light of the federal law, then the answer to Your Honor's question is no. But what we did when we filed our brief was look at the Court of Criminal Appeals' decision, made arguments about why it was reasonable and contrary to, and then got nothing back from the State. All right. Thank you. Thank you, Your Honor. Good morning. May it please the Court, Nick Spangler, on behalf of the State of Tennessee and the respondent in this case. I'd like to start with a couple of procedural facts in this case, and it's maybe an understatement to say that the procedural history of this case is long and complex. But the points that I'd like to make are really two. First is that this grand jury claim has been rejected by the State courts no fewer than four times, if you count both the trial-level proceedings and appellate proceedings. And it's been rejected by the federal courts twice, once by the district court in the second round of federal habeas proceedings and then once by this court as a result of the appeal of those proceedings. And it's with these facts in mind that we present our legal arguments as to the abuse of the writ. And it's a fairly straightforward argument. We agree with the petitioner that we are making a concession about Magwood and, as it's extended by King, that the vehicle issue, that is the petition's successiveness, that the petition as a fourth-in-time petition is an appropriate vehicle, let's say, to bring this claim because it's been determined under King as not being a successive petition. Interestingly enough, this court previously held that the petition as to that claim was successive and therefore yanked consideration of that claim from the district court in the latest iteration of district court proceedings in this case, which sort of goes to our argument that the actual merits of this claim are not properly before this court. We'd submit that it would be completely unprecedented for the state of the respondent to appear before the court on both the successiveness of a petition-slash-claim and the merits of the claim without the district court ever being given an opportunity to consider that claim. So we'd submit, basically for all the reasons discussed in the previous argument, as to the appropriate standard of review, the timing of the decisions, both state and federal, that remand would be appropriate for the district court to consider those issues in the first instance. Mr. Minton claims that we have everything we need to make those underlying decisions. So what's the matter with that argument? We'd submit that fact-wise, as far as the record goes and the concessions made by the state in the post-conviction proceedings, that there is this concession that, yes, the facts that were found in Mr. Jefferson's case do apply, and so factually the record is complete in order for the court to consider the merits of the claim, but that the issue of briefing, we'd submit that it's not been fairly briefed. You know, the state appeared, there was an order put down, I think, granting rehearing after the sentencing claim that had been remanded was denied, and then there was a rehearing petition filed and the rehearing was granted as to the grand jury claim, but the state didn't know whether it was expected to brief the issue as to the successiveness of that claim, as to the merits of that claim, and there was some briefing of the merits by the petitioner in the case, but still we'd submit that it's just appropriate for the district court to consider that issue in the first instance, or at least give us the opportunity, if the court's inclined to consider the merits of the claim, to do supplemental briefing on that issue. Because it does raise an important question. We have a 1970s decision by the state courts, a new judgment after 2009 from the state courts. We'd agree that 2254D deference applies, but we have a previous determination by this court in the 1970s, under non-2254D review, that the claim was meritless. Now we have a more deferential standard of review after 1996, after ADEPA. How can we possibly come to a determination, a different determination on the merits with a more deferential standard of review in 2016 than we did in 1973 with a less deferential standard? I'm presuming it was a de novo standard of review. I looked at the opinion last night, and I'm not sure that it's explicit, but presumably that's a de novo standard of review that this court previously determined that the claim was meritless. I just don't know how we reach a different determination as to the merits of that claim in 2016, when there's a concession by the petitioner that 2254D deference applies. I think what Mr. Mitton is saying is that's an unreported decision, and it's basically vacated. That may not be the correct word, but it's overturned essentially by Jefferson. We'd submit that's where our abuse of the writ argument comes in. We have this concession that it's a vehicle. The petition is no longer a problem. But as to this specific claim, we'd submit that abuse of the writ principles provide both a logical  King doesn't address how to resolve specific claims that are allowed to pass through the holding of Magwood and through the holding of King, but it makes some references which I think are informative. It says claims previously disposed of in the merits would not be difficult to sort out or take long to dispose of. Now, that's not an explicit reference to abuse of the writ or application of abuse of the writ, but it's certainly a suggestion that where a claim was previously disposed of, but it doesn't enable the court to go back in, dive in, reconsider the merits, it sort of suggests that there should be a deference to that earlier determination on the merits. Or it suggests that it won't take, it won't be very onerous because it's already been done. Certainly. And it also makes some references, I think, Magwood does as well, to other procedural defenses that might apply to summarily resolved claims that are allowed to pass through these, quote, successive petitions that are no longer successive. And it mentions specifically, I think both King and Magwood, mention exhaustion and procedural default ideas. And this is an idea that hadn't occurred to me until earlier this week. And that is that procedural default is not an ADEPA statutory defense. That's a procedural defense that applies to individual claims that predated ADEPA. And certainly I don't think there's any argument that procedural default has not survived ADEPA. And we simply submit that abuse of the RIP principle, similarly situated, existed prior to ADEPA and continue to exist post-ADEPA to preclude reconsideration of merits of claims such as this one that managed to sort of sneak through. And now you're confusing me. He did exhaust, so you don't get to procedural default. Oh, I agree. Procedural default, if you don't exhaust, and then you have to show cause and prejudice. Oh, I agree. We're not at all suggesting that procedural default applies to this claim. I'm simply drawing a parallel between the idea of procedural default as a procedural defense that applies to claims that existed pre-ADEPA and post-ADEPA, similar to the abuse of the RIP principles that we say should preclude reconsideration of the merits of the claims in this case. Not that procedural default applies to this claim, just that that's another example of a judicially created procedural defense to preclude reconsideration of the merits of the claims that preexisted ADEPA and continue to exist after ADEPA's enactment. Are there any cases that definitively answer the question as to whether abuse of the RIP survives after ADEPA? There are not to my knowledge. Because you have the interesting question of abuse of the RIP developed as a result of Brown and Fay and the ability to bring any claim any time, so they address that with abuse of the RIP. And then ADEPA significantly restricts, if not almost totally eliminates, the ability to bring a lot of claims. So the question is, what's left of abuse of the RIP to start with? And that's what we submit. ADEPA was sort of enacted with abuse of the RIP principles in mind. It sort of covered a lot of them but didn't cover all of them. And that's why we bring up the idea of procedural default. Because procedural default is an example of a type of judicially created, similar to abuse of the RIP, judicially created procedural bar to habeas claims that existed back in the abuse of the RIP days that wasn't abolished by ADEPA's enactment. I understand your argument. But I think the difference is that the cases say, and I realize I'm not directly on point, but the idea is that ADEPA got rid of abuse of the RIP and became the new standard. It didn't purport to get rid of procedural default. And there are cases that say that, yeah, I mean, ADEPA was intended to make the opening more narrow, but we recognize that because of the way it's written, there are circumstances where it opened the door wider. I mean, that's exactly what this line of cases say. And, you know, it is what it is. And that's the way we're going to proceed. And as it turns out, I mean, it looks like this is one of those cases that are sort of unusual in the sense that it wasn't procedurally defaulted. You do have another judgment. And if you walk through the statute, it looks like he's ‑‑ If you walk through the statute, you get to the point of concluding that it's not a successive petition and the petition can proceed. Again, our focus is not on the vehicle but on the claim specifically. Is it reaching the merits of the claim within or outside the certificate of appeal in this case? I think it's specifically within because the petition granting rehearing, that's what it did. It granted a certificate of appealability as to the grand jury claim exclusively. Now, whether or not that ‑‑ we haven't argued that that's improper, but it's certainly an anomaly given that previously there was a determination that the claim was successive, that that went all the way to the Supreme Court and the only thing actually before the court was the sentencing claim until the decision was made. You can read this in two ways. You can read it to say that it was limited to the question of whether the decision on second and successive was correct or you can read it more broadly to say that if you get by that, then you also get to the merits. Now, if you're willing to concede that, that's your right on behalf of the state. In terms of ‑‑ I mean, what I'll say is that it was unclear to us, certainly. It was unclear as to whether the court was ‑‑ what we're conceding is that King, we've not made any sort of law of the case arguments about King and the impact of King in terms of the petition being successive or not. What we are claiming, though, is that under abuse of the RIP principles, that the claim should not be reconsidered on the merits, that the court should defer to the earlier determination on the merits by both the ‑‑ not necessarily the state courts. I mean, it should apply at 2254 if it decides to reconsider the merits. Go back to the language in it's either King or one of the other successive cases that both you and Judge White were referring to. It basically says the door is open again, but it shouldn't really be very hard to decide these matters if they've been previously decided. You just can't do it under law of the case or race judicata principles. That doesn't address the question of what happens if the claim then is premised on an intervening decision that came along after that first determination that they say should be easy to resolve the issue. So I'm still wrestling with what import does Jefferson have on that? The import that Jefferson has is I think that you have a merits determination in this case by this court, a merits determination on the same grand jury in another case, and if we're stuck with 2254D review about an unreasonable application of clearly established federal law, how can there be clearly established federal law as to the resolution of the merits of a claim that this court itself has reached two completely different determinations on? As to the question or line of inquiry that Judge ‑‑ One second. But that argument, okay, concedes that that's the question you ask. It concedes that you don't say we're not looking at this because it's already been decided, that you say, okay, let's go back and see whether it was contrary to clearly established federal law. And that's not the primary argument we're making. That's the answer that I'm giving because that's the questions I'm receiving about how if you decide to go to the merits of the claim it should be resolved. That's our position. But our primary position is that the merits should not be reconsidered at all. And we cite some cases in our brief as far as the abuse of the writ goes and its survival after ADEPA that goes to the idea that, as to your question earlier, that ADEPA did not sort of abolish these previous rules. And really looking at the purpose underlying abuse of the writ principles and the purpose of ADEPA, it all goes to comedy. It all goes to deference to state court decisions. It all goes to the interest of finality. And if there's a choice to be made between whether or not you say that principles that might preclude reconsideration of the merits of this claim versus taking a different path and saying should we reconsider the merits, when both of those ideas, both abuse of the writ and ADEPA, go toward the idea of finality and comedy, you should go the route that says we should not reconsider this claim that we've already lost. Hold on just a minute. Now, maybe I misunderstood your position earlier. I thought you were saying that this court shouldn't address the merits. Generally speaking, our role at this stage of these proceedings is simply whether to grant a certificate to allow the district court to address whatever the underlying claim is. He said it was second successive. We say it isn't. That means that this petitioner has the right to his, what now we'll call his second initial habeas petition before the district court. Now I understand you to be saying that the district court shouldn't be able to address the merits either. Did you mean that? I'll say what I believe we will be arguing if this does go back to the district court, which is that the district court, as we're arguing with this court, should not dive into reconsideration of the merits of the claim and should simply defer to the federal court's previous determination of that claim under abuse of the writ principles. Now, as an alternative to that, if the court rejects that, if either this court or the district court rejects that, then our argument is that if you are going to reconsider the merits, then we have this idea of two different merits adjudications as to the same grand jury, 2254D deference applies, and that standard is simply not met as evident by the two different merits determinations on that exact same claim. But our primary argument is that no. For claims like this that sneak sort of, I don't want to use the term sneak, but after King and Magwood, claims that sort of are able to travel through on a successive in time petition but that are not successive by virtue of a new judgment, that have previously been adjudicated on the merits, that it does not make sense to reconsider the merits of those claims. If there's a prior federal adjudication, the court should defer to that adjudication under abuse of the writ principles that are consistent with the passage of ADEPA in terms of principles of finality and comedy to the states. So that's our position. I understand it's a little convoluted. If the court has any further questions, we'd certainly be happy to try to answer those, but I believe my time is out, so we appreciate your time. Again, we respectfully ask that you decline to re-dive into the merits of this claim, summarily reject it on abuse of the writ principles, or remand to the district court for initial consideration of these standard review questions. Thank you. As to abuse of the writ, first, the state didn't raise it in the district court, and the law is clear that abuse of the writ is an affirmative defense that the state has to raise in the district court in order to preserve it for this court. That didn't happen. You're talking about the proceedings, the second set of proceedings in the district court that led to this case? The proceedings we're having right now, where they're raising right now. Why would they be duty-bound to raise that when the whole question below was second or successive? Well, the whole question below wasn't second or successive, and that's another point I wanted to make. When Mr. Allen filed his petition, the state did file a motion to transfer saying Mr. Allen's petition was second or successive. We responded explaining that under the Magwood New Judgment Rule, it wasn't. The state at that point withdrew its motion to transfer and basically conceded at that point that Mr. Allen had not filed a second or successive petition. At that point, Mr. Allen filed his summary judgment papers on the grand jury discrimination claim. In its response, the state resurrected its second or successive argument, but recognizing the strength of Mr. Allen's Magwood argument, it also made an argument on the merits. The merits have already been briefed by the state in the summary judgment proceedings below. But you would concede, would you not, that even if something is fully briefed below, if it's not addressed by the district judge at all, generally speaking, we would remand it back and tell the district judge to address those issues? Generally speaking, that's correct. Why is this the different case? Sure. Under this court's Penny Dock Doctrine, where an issue is presented with sufficient clarity and completeness and consideration of it for the first time on appeal will materially advance the litigation, the court will go ahead and consider the merits of the claim. I'm not asking you if we can. We surely can. There's no prohibition. I'm just asking you why, in your judgment, we should, in this particular case, given what seems to me to be the complexity of this. The record's fully developed. The state's conceded that. There's no additional evidence that has to be presented to the district court. What we have, then, is an issue of law. Whether the evidence in the record supports Mr. Allen's grand jury discrimination claim. You said, first you said that they didn't raise abuse of the writ below, and then you started laying out what happened procedurally. So I'd like you just to go back to that. It was remanded on the sentencing, right? That's a couple steps ahead of where I was in the story. Okay. Yeah. We filed the petition. They filed a motion to transfer. We responded saying Magwood. They withdrew their motion to transfer. We filed for summary judgment on the grand jury discrimination claim. They responded resurrecting their SOS argument, but then also responded on the merits. The court, the district court told us, if we did not take the grand jury discrimination claim out of the petition, it was going to ship it as an SOS. We declined to do that. It got shipped up here as an SOS, and that's where the authorization proceedings up here occurred. I forget which proceeding you were talking about. The authorization proceedings occurred up here. The court initially said the district court got it right. We moved for rehearing, and the court said you don't get to do that under 2244B3E. We made an argument that because it's an initial decision of whether the petition is second or successive and not whether it's subject to 2244B1 or B2 standards, that decision is independent of the 2244B3E restrictions and can go on to rehearing, and this court agreed. Now, granted, we got denied in rehearing and denied on cert. We went back to the district court on a claim that did get authorized under the SOS, lost on that claim, filed a notice of appeal, came back up here, argued again that the grand jury discrimination claim was properly before this court, and then this court decided king, which concluded that we were right and that the grand jury discrimination claim was properly before this court, as the state now concedes it is. Okay, and then that's when they first raised? Right, in this brief. This is the first time. Did they ever raise abuse of the writ below? No. The first time we saw it in their brief today. Petitioner respectfully requests that this court vacate the district court's judgment and grant him relief on his grand jury discrimination. Wait, I just have one other. In the state court, they said that he didn't establish a prima facie case and he had no right to go any further. In the federal court, there was an evaluation of the actual claim. Is that correct? The way the claim is presented is, first, in both courts you got consideration of the claim, but under different analyses. In the state court, the state court looked at the record and said, we don't see evidence here of a prima facie case which would require the state to rebut with a nondiscriminatory reason. In this court's previous opinion, in the first habeas, this court said, we find in the judge's testimony a sufficient nondiscriminatory reason rebutting the prima facie case. And that's a piece in the Jefferson puzzle that when Jefferson came out, that same judge testified in the Jefferson proceedings, and Jefferson said, no, that's just a general good faith statement that doesn't count as far as rebutting the prima facie case Mr. Allin made. Thank you. Thank you. All right, thank you. The case will be submitted. Please adjourn the court.